# FOR PUBLICATION

FILED & ENTERED

MAY 18 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY egonzale DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>Michael and Vanessa Stoller<br><br><br><br><br><br><br><br>Debtor(s). | CHAPTER 7<br><br>Case No.:  1:12-bk-14347-MT<br><br>**AMENDED MEMORANDUM DECISION ON TRUSTEE'S OBJECTION TO DEBTORS' AMENDED CLAIM OF EXEMPTION**<br><br>Date:    May 4, 2022<br>Time:    10:30 a.m.<br>Courtroom: 302 (via ZoomGov.com) |

The Court held a hearing on Trustee's Objection to Debtors' Amended Claim of Exemption.  Appearances are as noted on the record for the hearing.

Michael and Vanessa Stoller ("Stollers" or "Debtors") filed a joint Chapter 7 case on May 9, 2012.  Nancy Zamora was appointed Chapter 7 trustee ("Trustee"). Debtor Michael Stoller is, or was, a practicing attorney, whose practice included significant representation of debtors in bankruptcy cases.

Stollers scheduled their residence which they have owned since 2000, a house at 5747 Hoback Glen Road, Hidden Hills, CA  91302 (the "Property").  The secured lender, or its successor in interest, Wells Fargo Bank, N.A. ("Wells Fargo"), holds the first position

on the Property (the "Loan").  Debtors' schedules and amendments thereto, prior to the case closing, and after reopening, are discussed in detail below.

On July 16, 2012, the Trustee filed a no-asset report.[1]  Stollers received a discharge on December 19, 2012 and the case was closed.  There were no further filings in the Chapter 7 bankruptcy case until August 23, 2021, approximately nine years later.

1. Litigation Cause of Action

In the bankruptcy case, Stollers filed a Statement of Intention indicating that they sought modification of the Loan to retain their Property. ECF No. 17.  There is agreement that the Loan modification did not work out as planned. Stollers have not made a payment on the Loan since 2013. Raab Decl'n ISO Wells Fargo Objection to Debtors' Motion to Compel Trustee to Abandon Interest in Property of the Estate. ECF No. 130-2 at 3.

Stollers claimed that the recording instruments were defective so the lenders had no right to foreclose, and they "misrepresented facts related to Debtors [sic] efforts to obtain a permanent loan modification, and the defendants' failure to provide one." ECF No. 135 at 5.  On March 5, 2015, Stollers commenced litigation against their lenders over their handling of the Loan, involving 11 causes of action, which stopped foreclosure of the Property.  Stoller v. Wall Street Mortgage Bankers, et al., Case No. LC102689, Los Angeles Superior Court (the "Litigation").[2] The Superior Court sustained the Defendants' demurrer without leave to amend, and Stollers appealed.

The Court of Appeal's opinion in Stoller v. U.S. Bank Nat'l Ass'n et al., 2018 WL 3868676 (Cal. Ct. App., Aug. 15, 2018) (the "Appellate Opinion") affirmed in part, reversed in part and remanded.  Wells Fargo Objection to Debtors' Motion to Compel Trustee to Abandon Interest in Property of the Estate, Request for Judicial Notice ("RJN"), ECF No. 130-1 Ex. A. The remaining cause of action which it remanded is a breach of contract (the "Action").

---

[1] In the interim, the case was closed, and reopened for the purpose of allowing Stollers to file the required Financial Management Course Certificate, and then reclosed.
[2] In bankruptcy court pleadings, only Wells Fargo has appeared for Defendants.

The Court of Appeal took judicial notice of Stollers' Chapter 7 petition, schedules, and discharge order. Wells Fargo RJN, ECF No. 130-1, Ex. A at 33.  As to standing, the Court of Appeal held:

> "[A] Chapter 7 debtor may not prosecute on his or her own cause of action belonging to the bankruptcy estate unless the claim has been abandoned by the trustee. (*Bostanian v. Liberty Savings Bank* (1997) 52 Cal.App.4th 1075, 1081. . .  If a debtor "failed properly to schedule an asset, including a cause of action, that asset continues to belong to the bankruptcy estate and [does] not revert to [the debtor]" upon discharge. (*Cusano v. Klein* (9th Cir. 2001) 264 F.3d 936, 945-946 (*Cusano*).)

Appellate Opinion, ECF No. 130-1, Ex. A, p. 34.

The Court of Appeal concluded that Stollers' Action accrued prepetition, in 2011, and that only the Trustee had standing.  Id. at 35-36. The Court of Appeal specifically found that the breach of contract claim "is property of plaintiff's chapter 7 estate." Id. at 36.  Nevertheless, after remand, Stollers continued to litigate the Action. In January 2019, they filed a Second Amended Complaint for Damages. Wells Fargo RJN, ECF No. 130-1 Ex. B.  In response to Wells Fargo's Motion for Judgment on the Pleadings, Stollers again argued, without success, that they owned the Action, alleging that it was abandoned to them upon discharge in the Chapter 7 case, or in the Chapter 11 cases (discussed below). Wells Fargo RJN, ECF No. 130-1 Ex. C, September 8, 2021 (the "Minute Order").

Stollers state that very little happened which required the bankruptcy case to be reopened between the Appellate Opinion and the Minute Order, the COVID pandemic had stalled the litigation, and they were still disputing the standing issue. Opposition to Motion Objecting to Debtors' Claimed Exemption, ECF No. 135 at 5.

2.  Stollers' Chapter 11 Cases

Michael Stoller filed an individual chapter 11 case on June 13, 2014, Case 1:14-bk-12971-MT, which was dismissed on December 16, 2016. Michael Stoller represented himself during most of that case.  The August 27, 2014 Status Report references Stollers' 2014 litigation filed in a different jurisdiction, U.S. District Court, S.D.N.Y., against lenders, apparently involving the same loan modification claims. ECF No. 53.  He filed another

individual chapter 11 case on July 3, 2019, Case 1:19-bk-11646-MT, which was dismissed on April 30, 2020. Amended Schedule A/B does not mention the Litigation. ECF No. 21. However, the Status Report filed September 3, 2019 does refer to the Litigation. ECF No. 54. Michael Stoller did not claim an exemption in the Action in either of the Chapter 11 cases.[3] In a recent development, on February 8, 2022, Vanessa Stoller filed an individual Chapter 11 case, 1:22-bk-10141-MB, which is pending. Attorney Michael S. Kogan represents Ms. Stoller in her Chapter 11 case, and continues to represent Stollers in the Chapter 7 case.

3.  Reopened Chapter 7 and Trustee's Motion to Approve Compromise or Sale under § 363

On August 23, 2021, approximately three years after the Appellate Opinion, Stollers moved to reopen their Chapter 7 case under § 350 and Rule 5010. ECF No. 67. During that three-year period, Stollers did not seek an abandonment from the Trustee, and did not even inform the Trustee about the Action.

The basis for the Motion to Reopen stated, "Debtors [originally] did not include a potential claim against the holder of the Debtors' mortgage note, their servicer and related parties as Debtors did not know at that time that they had any claims against the holder of their mortgage, their servicer and/or related parties." ECF No. 67 at 2. It further states, "Debtors' omission of their possible claims was not done with any intent to conceal or withhold this information from the Bankruptcy Court." Id.

Stollers' breach of contract Action alleges that they were promised a permanent loan modification in July 2011 that they never received. Wells Fargo RJN, ECF No. 130-1, Ex. B ¶ 42. Stollers maintain "…after Debtors received their discharge in 2012, they notified Wells Fargo they wanted to make payments on the modified loan. At that point Debtors never assumed or thought they would be making claims against Wells Fargo as

---

[3] Stollers argue that evidence of these cases is inadmissible. The Court ruled during the oral argument that they are admissible as public records, statements against interest and relevant. See also n. 13. The Trustee details statements made in the various Chapter 11 cases. ECF No. 127 at 10-13. It is not necessary to detail them except for the few specific references in this Memorandum.

1  their [sic] certainly was no indication from either side of a potential dispute concerning the
2  modification." ECF No. 135 at 3-4.

3      The Order Reopening the Case was entered on September 14, 2021. ECF No.
4  69. The Action appears to be the estate's only remaining asset.

5      On September 30, 2021, Trustee was reappointed, and shortly thereafter she
6  withdrew her "no asset" report. On January 21, 2022, Trustee filed a Motion to Approve
7  Compromise, ECF No. 107. On February 4, 2022, Trustee noted a hearing to Approve
8  a Compromise or in the alternative, a § 363(b) sale of the Action. ECF No. 124. On May
9  4, 2022, the Court approved the settlement as reasonable under Rule 9019, and held an
10 auction. Wells Fargo was the successful bidder at the auction and purchased the Action
11 for $50,000. Stollers originally had an overbid of $60,000, which they orally withdrew at
12 the hearing on the auction.

13     As of January 21, 2022, the date the Trustee filed her Motion to Approve
14 Compromise, Stollers had not yet filed an exemption claim for a portion of that asset,
15 even though the case was reopened approximately five months earlier for the exclusive
16 purpose of scheduling the Action and addressing Stollers' exemption claims.

17     4. Original Schedules and Amended Schedule B in 2012

18     In their original schedules, filed May 23, 2012, Stollers valued Michael Stoller's law
19 firm, Michael T. Stoller, APC at $40,000, a "value based upon collectible receivables."
20 ECF No. 15, Schedule B at 5. They claimed an exemption in the amount of $20,225 in
21 Michael T. Stoller, APC[4] under CCP §703.140(b)(1)(5), otherwise known as the "catch-
22 all" or "wildcard" exemption. ECF No. 22. They also claimed an $8500 exemption in
23 jewelry under CCP §703.140(b)(4)(5). Id. Stollers each signed a declaration that the
24 schedules were true and correct as of May 22, 2012. ECF No. 30. On July 11, 2012,
25 Stollers filed Amended Schedule B, scheduling Michael T. Stoller, APC as "$0.00, stating
26 "value based on collectible receivables – net value." ECF No. 36 at 3. Trustee and
27 Stollers' counsel exchanged correspondence about the reduction in value. ECF No. 135,

28

---

[4] Trustee has detailed changes how Michael Stoller's law firm was structured, and Stollers have objected to that evidence. It is unnecessary to explore this issue because later iterations of the firm are not relevant at this point.

Ex D. Stollers filed no other amended schedule at that time, so Schedule C with the jewelry and the $20,225 wildcard exemption remained on record.

   5. <u>Amended Schedules in 2021-22</u>

   After the case was reopened, Stollers amended their schedules three times in approximately four months.

   a. September 24, 2021 Amendments. On September 24, 2021, in Amended Schedule B, Stollers scheduled the Action which they valued at $700,000.  ECF  No. 74 at 2.  They also filed Amended Schedule C, checking the box to claim an exemption in "100% of fair market value, up to any applicable statutory limit" of the Action, under CCP 703.140(b)(5).  ECF  No. 73 at 1. They did not claim a specific dollar amount as exempt but sought up to the wildcard statutory limit of $25,340. Neither the jewelry nor the law firm was listed on the Amended Schedule B of personal property or Amended Schedule C of exemptions.

   b. October 4, 2021 Amendment.  On October 4, 2021, ten days later, Stollers filed Amended Schedule C, and claimed the value of their exemption in the Action at $0.   ECF No. 94 at 1.  There is no explanation or allegation that it was filed in error.  Opposition to Debtors' Claim Exemption, ECF  No. 135 at 7, and Dec. of Stoller, ECF  No. 135 ¶19. On January 21, 2022, the Trustee filed the Notice of Settlement of the Action. ECF No. 107.[5]

   c. January 31, 2022 Amendments. On January 31, 2022, Stollers responded to the Trustee's settlement of the Action by again filing Amended Schedules. ECF  Nos. 111-117. In Amended Schedule B, they valued the Action at $50,000.  ECF  No. 113.[6] In Amended Schedule C, they claimed as exempt $25,340 of the Action under the wildcard exemption (the "Action Exemption").  ECF No. 114.[7]  This version of Schedule C was the first one which identified a specific dollar amount in the Action other than $0. Two days

---

[5] Stollers argue that the Trustee could not have evaluated the Action properly as the notice of settlement was filed in the *state court* case shortly after her appointment. ECF No. 135 at 7. However, what is relevant to this Court is the Motion to Approve Compromise under Rule 9019 filed January 21, 2022, about three months after Trustee's appointment.

[6] Amended Schedule B also lists a disputed claim for $315,000 against Mr. Stoller's former business partner, Rick Bishop.

later, Stollers filed a Motion to Compel Trustee to Abandon Property of the Estate under
§ 554(b), arguing that their exemption combined with costs to the Trustee made it
impractical to administer the Action as an estate asset.  ECF  No. 119. The Court denied
that Motion after hearing. ECF No. 156.

6.  Trustee's Objection to the Action Exemption

On February 9, 2022, Trustee timely objected to the Action Exemption. ECF No.
127. She argues that her objection should be sustained, in whole or in part, on several
grounds, including judicial estoppel and equitable estoppel. Stollers responded. ECF
Nos. 135 and 151.

7.  Rule 1009(a)

Rule 1009(a) provides:

> General Right To Amend. A voluntary petition, list, schedule, or statement
> may be amended by the debtor as a matter of course at any time before the
> case is closed. The debtor shall give notice of the amendment to the trustee
> and to any entity affected thereby. On motion of a party in interest, after
> notice and a hearing, the court may order any voluntary petition, list,
> schedule, or statement to be amended and the clerk shall give notice of the
> amendment to entities designated by the court.

Exemption rights, and amendments thereto, are to be liberally construed. That
includes the right to amend the list of exempt property. Goswami v. MTC Distributing (In
re Goswami), 304 B.R. 386, 393 (B.A.P. 9th Cir. 2003). A claimed exemption is
presumptively valid. Gonzalez v. Davis (In re Davis), 323 B.R. 732, 743 (B.A.P. 9th Cir.
2005).  Trustee's objection may not be sustained based on debtor's bad faith or prejudice
to creditors. Law v. Siegel, 134 S.Ct. 1188, 570 U.S. 904 (2014);   Elliott v. Weil (In re
Elliott), 523 B.R. 188, 189  (B.A.P. 9th Cir. 2014); Gray v. Warfield (In re Gray), 523 B.R.
170 (B.A.P. 9th Cir. 2014).

For purposes of this case, the Court accepts Stollers' position that Rule 1009(a)
allows a general right to amend, even after the case is reopened.[8]

---

[8] The Court questions the right to amend liberally in a reopened case after Law v. Siegel. See, e.g., In re Benjamin,
580 B.R. 115, 118 n. 11 (Bankr. D.N.J. 2018)(amendment in a reopened case must meet the excusable neglect

8.  <u>Equitable Estoppel</u>

Equitable estoppel can be considered under California law to sustain an objection to an exemption.  <u>Phillips v. Gilman (In re Gilman)</u>, 887 F. 3d 956,  966 (9th Cir. 2018); <u>Guevarra v. Whatley (In re Guevarra)</u>, 2022 WL 884595 (B.A.P. 9th Cir. 2022). Trustee bears the burden of proof to establish the elements of equitable estoppel, and it must be applied strictly and established in every instance.

<u>Guevarra</u> provides a recent and detailed framework for analysis of this issue. The facts of <u>Guevarra</u> are fairly unique and need not be fully recounted here. In short, the bankruptcy court had held that Guevarra, a chapter 7 debtor, was equitably estopped from amending his wildcard exemption. Initially, Guevarra claimed a wildcard exemption of $310 in bank accounts and $22,306 in a 401(k) account.  Guevarra also had real property which he scheduled as jointly held by Guevarra and his nephew. The trustee moved to sell the real property. Guevarra amended his schedules A/B and listed the value of his interest in the real property at $0. After the bankruptcy court ruled that Guevarra indeed owned 50% of the real property, he amended Schedule C to claim $27,915 of the sale proceeds as exempt. A period of 19 months had elapsed before Guevarra's amendment. Trustee objected to the amended exemption claim, and the Court sustained the objection on equitable estoppel grounds. Trustee claimed he relied on the initial schedules and would not have sold the property had he known Guevarra was going to claim an exemption. The bankruptcy court denied the exemption without a hearing.  In the first appeal, the Ninth Circuit BAP vacated and remanded to fully consider whether

---

standard); <u>In re McCowan</u>, 2018 WL 4078613 (Bankr. E.D.N.C. 2018)(same); <u>In re Awan</u>, 2017 WL 4179816 at *3 (Bankr. C.D.Ill 2017)("while some courts have interpreted the phrase broadly, drawing no distinction between an open case and a reopened case, [s]uch a circular interpretation would render the rule's limitation completely illusory and, therefore, meaningless.") The Court agrees with <u>Awan</u> in its conclusion that "many of the courts applying Rule 1009(a) equally in open and reopened cases found comfort in their perceived equitable powers as a way of curbing abusive practices, such as bad-faith or prejudicial amendments." (at *3) (citing <u>Goswami</u>). "But to the extent such decisions relied on the use of equitable powers to disallow exemptions as a sanction for a debtor's misconduct, the Supreme Court's opinion in <u>Law v. Siegel</u>, 134 S.Ct. 1188, 1196–97 (2014), unambiguously abrogated their ability to do so." <u>Id</u>. The Ninth Circuit Court of Appeals has not ruled on the standard to be used in a reopened case under Rule 9006, but it may well reach a different conclusion than <u>Goswami</u>, considering the effect <u>Law v. Siegel</u> has had on the court's equitable powers to curb abuse. Because this Court's long-standing policy is to follow the Ninth Circuit Bankruptcy Appellate Panel, <u>Goswami</u> will be followed here.

the debtor is equitably estopped from claiming an exemption in the proceeds.[9]

The bankruptcy court sustained the objection based on equitable estoppel and another appeal ensued. On the second appeal, the BAP held that equitable estoppel can be invoked to sustain objections to California exemptions. Guevarra at *6 citing Gilman. Five elements must be met: "(a) a representation or concealment of material facts; (b) made with knowledge, actual or virtual, of the facts; (c) to a party ignorant, actually and permissibly, of the truth; (d) with the intention, actual or virtual, that the ignorant party act on it; and (e) that party was induced to act on it." Id.

Turning to each element:

a. Representation or Concealment of Material Facts

Guevarra adopted the reasoning in an unpublished Ninth Circuit decision, Lua v. Miller (In re Lua), 692 F. App'x. 851 (9th Cir. 2017).  Lua was in a protracted fight with the trustee over whether real property was community property or not.  After the bankruptcy court held the property was 100% community property, Lua amended her schedules to claim a homestead exemption.  The Circuit held that the first schedules are not a representation that the debtor will not amend schedules again if circumstances change. Id. at 852-53.  Lua's circumstances changed, so she was not equitably estopped from amending her exemption claim.

There was no concealment of material facts in either Guevarra or Lua. The amendments at issue were based solely on changed circumstances arising out of court rulings based on facts known to both sides. Guevarra and Lua both experienced "bona fide changes" to their circumstances (i.e. the court rejected their legal positions) so amendment to their exemption claims were not barred.  Guevarra at *11.

Stollers argue that they are in similar circumstances to Guevarra – their complaint was filed years after the bankruptcy case closed, and the Court of Appeal ruled it needed to be prosecuted by the Trustee or abandoned. Stollers ignore two significant distinctions – first, they never disclosed the Action to the Trustee until forced to do so, and second,

---

[9] Guevarra v. Whatley (In re Guevarra), 2021 WL 1179619 (B.A.P. 9th Cir. March 29, 2021).

they had already obtained a discharge while representing that the wildcard exemption would be used to exempt Michael Stoller's law firm.

The concealment of the Action is more explicit. It is reasonable that it would not have been disclosed when Stollers initially filed the Chapter 7 case in 2012.  There was only a loan modification in process at that point. The loan modification process had developed into a cause of action by 2015 when Stollers filed their complaint against the lenders.  Their complaint explicitly alleged facts showing that at least some of the causes of actions arose pre-petition, for example, Second Amended Complaint, ¶¶ 24, 27, 28, 29, 39, 40, 41, 42, 43, 44, and 50. Wells Fargo RJN, ECF No. 130-1, Ex B.  At that point, the bankruptcy case should have been reopened so that the Action would not be concealed.

The Appellate Opinion informed Stollers on August 15, 2018 that they lacked standing. That is a bona fide change of circumstances. Yet, for three years, they continued to prosecute the Action and did not inform the Trustee. They justify this on the basis that they disagreed with the Court of Appeal and were continuing to litigate the case on remand as well as the inaction of the trial court during the pandemic. They also argue that the "Action as it stands has little or no monetary value other than the stopping of the Wells Fargo foreclosure . . . and requesting that the State Court determine the Debtors obligations under their mortgage…" ECF  No. 135 at 5.  Although those may be permissible legal arguments, they still continued the concealment and did not share significant facts with the Trustee.

b. <u>Knowledge of the Facts</u>

Concealment of these material facts was made with sufficient knowledge. Michael Stoller is an experienced bankruptcy attorney. There is no dispute that he has filed over 100 bankruptcy cases for other clients.[10] If his experience and knowledge of bankruptcy law were not enough to know that a debtor needed to promptly reopen a case to schedule a cause of action which arose pre-petition, the California Court of Appeal put him on clear

---

[10]  See Declaration of Trustee's Counsel ¶10, referencing PACER search. ECF No. 127 at 33.

1    notice of what he was required to do in 2018.

2        Also, Michael Stoller was the sole party with knowledge of the collectability and

3    nature of his law firm's receivables[11] and would have known that any effort to conduct an

4    examination about them could be costly and likely only worthwhile if they were significant.

5        Similarly, Stollers were aware of the facts surrounding the Action. They filed it,

6    prosecuted it, appealed it, and for three years ignored the Appellate Opinion that it

7    belonged to the estate.

8                    c.   To a Party Ignorant of the Facts

9        "Equitable estoppel focuses on the representation(s) to the party allegedly

10   prejudiced." Guevarra at *8 (citation omitted).  Early on, Guevarra informed the trustee

11   of his resulting trust argument and provided an explanation for his valuations. The trustee

12   moved to sell the property, showing he had knowledge and fully understood.  He was not

13   misled and he did not have less information than the debtor.

14       Here, the Trustee did inquire about the value of the law firm. She sought to

15   determine whether it had value for creditors. At that point, Stollers amended the value of

16   the firm from $40,000 to $0. Their counsel explained "based upon the [enclosed] balance

17   sheet, the Debtor has determined that the law practice has a net value of $0." ECF No.

18   135 Ex D (the balance sheet is not included in the exhibits provided to the Court).  A few

19   days later, the Trustee filed her no asset report.

20       There is no indication that the Trustee agreed that there was no value whatsoever

21   in the law firm, but she chose to close the case without pursuing the matter further. That

22   is not surprising, given the cost and difficulty of liquidating a small law firm's assets. There

23   has been no explanation of why Stollers first valued the law firm at $40,000, but less than

24   two months later, that value was reduced to nothing.[12] The $20,225 wildcard exemption

25

26   _____

[11] The Trustee argues also that there have been three different law firms run by Michael Stoller over the ten-year life of
27   this case and that this concealment makes it even more difficult to evaluate the wildcard exemption value. Debtors
     object to this evidence. Because the value of the first firm and the complications of collection efforts are significant
28   enough with just one firm, there is no need to sort through this. Also, neither side wanted an evidentiary hearing, so
     probing this issue on this record would be insufficient.
     [12] The change in the valuation of the law firm was discussed by counsel in an email and argued in the briefs, but Michael
     Stoller himself filed a declaration under penalty of perjury and remained silent about why the value of the law firm
     changed. ECF No. 135 at 21-26. Stollers also distance themselves from previous statements and object to any

1    was not amended, so any further analysis would have been a waste of time for the

2    Trustee.

3           The Trustee was also ignorant of the Action until the case was reopened in 2021.

4    While Stollers have argued that the net value of the cause of action was worthless to the

5    estate and should have been abandoned to them (because it was necessary to keep them

6    in their Property and possibly force Wells Fargo to honor the Loan modification), this was

7    not their decision to make unilaterally.

8                         d.   Intention that Ignorant Party Act

9           Stollers must have intended that the Trustee act on the information provided about

10   the value of the law firm, or they would have amended their exemptions at the same time

11   as they amended their Schedule B valuing the law firm.

12          In the reopened case, Stollers intended that the Trustee act on the amended

13   schedules and exemptions because they sought an abandonment of the Action to them.

14   ECF  No. 119. They stated that the purpose of the reopening was to get the trustee to

15   abandon the Action to them.

16                         e.   Party Induced to Act

17          Guevarra admonishes that "the failure to exempt an asset does not impermissibly

18   induce a trustee to administer an asset as he or she knows that debtors may amend their

19   exemptions as a matter of right." Guevarra at *12. Here, however, the combination of the

20   zero-valuation  assertion  combined  with  continued  maintenance  of  the  wildcard

21   exemption, induced the Trustee to close the case as a "no asset" case. The Trustee

22   allowed the discharge to be entered without payment to creditors. Whatever value the

23   wildcard exemption had induced the trustee to abandon that asset to the debtor by closing

24   the case.

25          More significantly, had a potential cause of action been disclosed earlier to the

26   Trustee, that value could have been evaluated at a point when it might have yielded

27   something more significant.  Wells Fargo may have had an incentive to settle the claims

28

---

references to their later Chapter 11 schedules as hearsay when they are their own sworn statements admissible under
FRE 801(d).

for more, rather than litigate for years over numerous causes of action. By the time Stollers disclosed it to the Trustee, only a single breach of contract action remained.

The California Supreme Court has held that "equitable estoppel…rests firmly upon a foundation of conscience and fair dealing." City of Long Beach v. Mansell, 476 P. 2d 423, 442 (1970); see also Hopper v. Martinez (In re Martinez), 2016 WL 7338405 (Bankr. E.D. Cal. 2016) at *7.  The lengthy concealment of the Action, combined with substituting the wildcard exemption with a different asset after ten years, avoided the dictate of the Appellate Opinion and then fair dealing with the bankruptcy estate.

Trustee's objection under California's doctrine of equitable estoppel is sustained.

9.    Judicial Estoppel.

Trustee also objects based on judicial estoppel. "As an equitable doctrine, judicial estoppel is not easily defined." Auyeung v. Christensen (In re Auyeung), 2015 WL 3609301 (B.A.P. 9th Cir. 2015) at *10. The elements of judicial estoppel differ somewhat from California's equitable estoppel but involve a similar analysis. As explained in Wilcox v. Parker (In re Parker), 471 B.R. 570, 576 (B.A.P. 9th Cir. 2012):

> In deciding whether judicial estoppel should be applied, we typically consider three elements: (1) whether a party's later position is 'clearly inconsistent' with its original position; (2) whether the party has successfully persuaded the court of the earlier position, and (3) whether allowing the inconsistent position would allow the party to 'derive an unfair advantage or impose an unfair detriment on the opposing party.'
> (citation omitted).

In re Sievert, 634 B.R. 1030 (Bankr. W.D. Wis. 2021) is an instructive case utilizing this doctrine. There, post-closing, Sievert pursued a personal injury claim. Three and a half years after the bankruptcy case was closed, an independent discovery of the claim was raised, and the debtor moved to reopen her case to exempt the recovery she received. The trustee objected, and the Court sustained the objection, analogizing to judicial estoppel:

> Sievert failed to disclose the claim. She maintained in the lawsuit she had a claim and now wants to change her position in this Court so that she can keep the benefits of the claim. Her position today is inconsistent with her lack of disclosure either in the original schedules or in the years since. It was only when the claim was independently discovered and pursued that

she belatedly filed amendments. It was not the result of mistake or inadvertence. <u>See</u> <u>New Hampshire v. Maine</u>, 532 U.S. 742, 753, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (noting that "it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake").

<u>Id</u>. at 1038.

Turning to the first element, as explained earlier, Stollers' later position is inconsistent with their original position. Originally, in 2012, Debtors exempted the law firm which they valued at $40,000.  Later, they amended schedule B to value that property at $0. Those were the circumstances upon which the case was closed, and Stollers were granted a discharge. They reopened for the express purpose of scheduling the Action (which they have been litigating since 2015) and seeking an exemption in a late-scheduled asset.  They essentially used up their wildcard exemption by relying on it already in the case and only substituting a new asset to exempt once it was too late to see whether the earlier exempted asset could be liquidated for the benefit of creditors. As explained above, with respect to equitable estoppel under California law, these changes in the exemptions are "clearly inconsistent".

Stollers argue there was no effort to exempt in 2021 because the Action was worthless (had no net value) and they thought it would be abandoned. ECF No. 135 at 5-6; and ECF No. 151. This argument concentrates solely on what happened after reopening.[13] They would have the Court ignore the rights and exemptions they invoked in 2012. Stollers' argument ignores their use of the wildcard in such a way which resulted in a no-asset case, and ultimately a discharge. They argue that it is proper to revise an exemption years later. It is permissible to amend an exemption where a court's ruling, based on facts known to all, changes the circumstances for debtors. However, where the exemption is something the Trustee relies on and then sees it substituted ten years later, the two positions are "clearly inconsistent".

Trustee also argues that Mr. Stoller did not schedule the Action nor claim an

---

[13] Stollers also objected to Trustee's declaration on various evidentiary grounds (FRE 401, 402, 603, 701, 801, and 1001). ECF No. 133 and 134. These objections were overruled at the hearing.

1  exemption in either of his intervening chapter 11 cases.  Effectively, Trustee argues
2  Stoller waived the right to amend the exemption. Stollers argue those cases are irrelevant
3  (ECF  No. 135 at 6). The issue of waiver is unnecessary to decide at this time.

4      The second element is whether the party has successfully persuaded the Court of
5  its earlier position.  By filing their Schedules, Stollers persuaded this Court of their earlier
6  position – as to what personal property they owned on the petition date, their values, and
7  their exemption claims.  In Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778 (9th Cir.
8  2001), an insured was judicially estopped from bringing suit by his failure to list insurance
9  claims as assets in schedules filed in connection with his earlier bankruptcy petition.
10  "Judicial estoppel is an equitable doctrine that precludes a party from gaining an
11  advantage by asserting one position, and then later seeking an advantage by taking a
12  clearly inconsistent position." Id. at 782. The Circuit held that "Hamilton is precluded from
13  pursuing claims about which he had knowledge, but did not disclose, during his
14  bankruptcy proceedings, and that a discharge of debt by a bankruptcy court, under these
15  circumstances, is sufficient acceptance to provide a basis for judicial estoppel…." Id. at
16  784. "Judicial estoppel will be imposed when the debtor has knowledge of enough facts
17  to know that a potential cause of action exists during the pendency of the bankruptcy, but
18  fails to amend his schedules or disclosure statements to identify the cause of action as a
19  contingent asset. Id. See also In re Aubry, 558 B.R. 333, 345 (Bankr. C.D. Cal.
20  2016)(Debtor estopped from exempting an annuity that was never listed on schedules.)
21  It is undisputed that Stollers had the knowledge of the rights of the Action in 2018, but
22  Trustee was unaware of them until 2021.  Here, of course, the judicial estoppel theory is
23  being applied to the amended exemption claim, not the Litigation.

24      On the third element, whether allowing the inconsistent position allows Stollers to
25  derive an unfair advantage or impose an unfair detriment on the opposing party (here, the
26  Trustee), Stollers are trying in effect to get two bites of the same apple. In 2012, they
27  sought and obtained the full benefit of wildcard exemption in the law firm.  Revaluing that
28  asset to $0 did not modify their exemption claim.  Their wildcard exemption was

exhausted. The Trustee would have had costly collection expenses and likely would have brought in less than what had been exempted in order to challenge the law firm valuation. Any value left when the case was closed in 2012 certainly would not be collectible in 2021 when the case was reopened. That use of the exemption helped effectuate a speedy 'no-asset' case discharge. Allowing Debtors to claim an exemption in the Action ten years later under the wildcard exemption is an unfair advantage.

The Trustee has called this a protracted game of "Three-card Monty." ECF No. 127 at 3. Whether or not Stollers intended to play games, this exercise has forced the Trustee to dedicate time and resources to evaluate assets, hire counsel, research the history of the case, evaluate claims, engage Wells Fargo in a settlement of claims, and file motions. That is the imposition of an unfair detriment on the Trustee.

The unfair advantage or detriment here also arises because, three years after having been directed to substitute in the Trustee as the rightful owner of the Action, Stollers now seek to reap the benefit of an exemption of a cause of action that belonged to the estate. The original Litigation had 11 causes of action, not only one. Had Stollers scheduled the Action in 2012, or even reopened their case in 2015, as they should have, they might have made a different exemption claim. The Trustee and creditors relied on all the schedules, and Stollers received a discharge, thereby benefitting from taking that position, with the corresponding unfair detriment to the estate. Moreover, the statutory period for seeking to vacate their discharge order is now expired, so any civil penalty for non-disclosure is moot. See § 727(e).

10. Calculation Dispute.

Trustee and Stollers argue over the permissible amount of the exemption claim. The calculation dispute will not be addressed since the entire exemption claim is disallowed under both the doctrines of California equitable and federal judicial estoppel.

//

//

Conclusion

Stollers seek to exercise their right to amend under Rule 1009(a), ten years after their case closed. They argue that circumstances changed, permitting an amendment. They already used the wildcard exemption to obtain a discharge, which alone is grounds to sustain the objection. Secondly, they precluded the Trustee from operating for the benefit of creditors during the time they did not reopen the case and continuing into the reopened case. The desire to pursue every avenue possible to save their home is understandable, but they may not keep changing positions in a way that prejudices the trustee from discharging her duties.

The Court sustains Trustee's Objection to the Action Exemption Claim. Stollers are judicially and equitably estopped from claiming rights under Amended Schedule C, ECF No. 114. Trustee is instructed to submit an order consistent with this Memorandum.

###

Date: May 18, 2022

Maureen A. Tighe
United States Bankruptcy Judge